FILED
2021 JUL 13 AM 9:26
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SARAI McDONALD,<br><br>Plaintiff,<br><br>v.<br><br>DAVIS COUNTY, DAVIS COUNTY SHERIFF'S OFFICE, DAVIS COUNTY DETENTION CENTER, JOHN DOES I–XX, and DOE ENTITIES I–XX,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 1:20-cv-00136-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is a Motion for Judgment on the Pleadings (the "Motion") filed on behalf of Defendants Davis County, Davis County Sheriff's Office ("DCSO"), and Davis County Detention Center ("DCDC") (collectively, "Defendants").[1] ECF No. 12. The court entertained oral argument on the pending Motion on July 8, 2021. Having reviewed the memoranda[2] and

---

[1] At oral argument, counsel for Davis County, DCSO, and DCDC confirmed that the Motion is not filed on behalf of the John Doe and Doe Entity defendants and is not directed at the viability of any claims against these fictitious defendants.

[2] The court did not consider the three exhibits that Plaintiff attached to her response brief because they were not attached to her Complaint. *See Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1247 (10th Cir. 2006) ("In [reviewing the district court's judgment on the pleadings], we are permitted to treat exhibits attached to a complaint as part of the pleadings." (citation omitted)), *abrogated in part on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750 (10th Cir. 2013) (unpublished); *see also Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal." (citations omitted)).

considered the oral argument, the court grants Defendants' Motion and grants Plaintiff Sarai McDonald ("Plaintiff") leave to amend her Complaint.

## BACKGROUND[3]

Plaintiff brought this cause of action in Utah state court on April 20, 2020. ECF No. 2-1. In her Complaint, Plaintiff asserted several causes of action against Defendants: assault, battery, violation of civil rights under 42 U.S.C. § 1983, violation of civil rights under article I, section 9 of the Utah constitution, and malice. *Id.* Defendants accepted service of Plaintiff's Complaint on September 21, 2020 and timely removed to this court based on federal question jurisdiction on October 21, 2020. ECF No. 2.

Plaintiff's cause of action arises from her incarceration at DCDC, a division or law enforcement agency of Davis County, beginning in June 2018. While incarcerated at DCDC, Plaintiff was "subjected to systematic physical and emotional abuse." ECF No. 2-1 ¶ 8. This abuse was at the hands of DCSO employees and other inmates known as "POD Guards," who performed duties on behalf of DCDC and DCSO.

As part of the "systematic" and "consistent" (ECF No. 2-1 ¶ 15) abuse Plaintiff suffered, she was routinely, and for periods longer than law or regulations permit, kept in solitary confinement. She was confined to her cell for days and sometimes weeks at a time. DCDC employees and POD Guards also routinely denied her food, causing Plaintiff to lose a substantial amount of weight. Plaintiff did not regain weight until she was transferred to the Utah State Hospital at the end of 2018 for a mental competency evaluation.

---

[3] The following facts are based on allegations contained in Plaintiff's Complaint. ECF No. 2-1.

In addition to the foregoing abuse, on the evening of October 22, 2018, three officers entered Plaintiff's cell and physically harmed her. Approximately five minutes prior to their entry, Plaintiff had been given a hot dinner tray by a deputy and POD Guards. Upon entering Plaintiff's cell, the officers—one of whom was Corporal Meldrum—forcibly took Plaintiff's food tray away from her. Corporal Meldrum then punched Plaintiff in the head, struck Plaintiff with two flat hands, and pushed her down onto her metal bunk, which did not have a mattress on it. Corporal Meldrum and the other two officers then exited Plaintiff's cell with her food tray. Plaintiff did not receive medical attention for the injuries she sustained during the encounter until several hours later. The next morning, Plaintiff was badly bruised around her mouth and chin because of the encounter the prior evening. On May 21, 2019, Plaintiff requested that Davis County, DCSO, and DCDC conduct an internal investigation of Corporal Meldrum, the other DCSO employees, and the POD Guards. Plaintiff has not received any information related to the investigation and believes that no such investigation has occurred. Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Plaintiff fails to state a claim upon which relief can be granted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party, "[a]fter the pleadings are closed—but early enough not to delay trial," to "move for judgment on the pleadings." FED. R. CIV. P. 12(c). Rule 12(c) motions for judgment on the pleadings are evaluated under the same standard applicable to Rule 12(b)(6) motions to dismiss. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992) (citation omitted). Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate when the plaintiff fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light

most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

In their Motion, Defendants advance several arguments in favor of dismissal. First, Defendants argue that Plaintiff's claims against DCSO and DCDC should fail because DCSO and DCDC are non-jural entities that cannot be sued. Second, Defendants argue that they are immune from Plaintiff's assault and battery claims under the Governmental Immunity Act of Utah ("GIAU"). Third, Defendants argue that Plaintiff has failed to state a municipal liability claim under § 1983. Fourth, Defendants argue that Plaintiff's claim under the Utah constitution has not been sufficiently pleaded. Finally, Defendants argue that Plaintiff's malice claim should fail because malice is not an independent cause of action under Utah law. The court considers each argument in turn.

### I. Claims Against DCSO and DCDC

Defendants argue that Plaintiff's claims against DCSO and DCDC should be dismissed because DCSO and DCDC are subordinate agencies to Davis County and are therefore non-jural entities that cannot be sued. Defendants cite two unpublished cases from the District of Utah in support of their position. In response, Plaintiff concedes that DCSO and DCDC are non-jural entities. However, Plaintiff argues that, as provided in her Complaint (ECF No. 2-1 ¶ 5), she should be permitted to maintain her causes of action against DCSO and DCDC until she completes

discovery, learns the contact information of the officers and officials involved in her allegations, and amends her Complaint to name the correct individuals.

A. Non-Jural Entities

A non-jural entity is an entity that is "incapable of suing or being sued in its own name." *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015). Federal Rule of Civil Procedure 17 states that the capacity of a party who is not an individual or a corporation, such as a governmental entity, to sue or be sued is determined "by the law of the state where the court is located." *See* FED. R. CIV. P. 17(b)(3). Although there is a Utah statute that expressly provides that a county may sue and be sued, UTAH CODE § 17-50-302(2)(a)(i), "there is no statutory or case authority supporting a direct action against a county's subdivisions, including its jails." *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (unpublished).

The Tenth Circuit has affirmed the dismissal of a city's police department because the police department "[was] not a separate suable entity" in a case asserting causes of action under § 1983, various federal and state constitutional sections, and common law. *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985); *see also Melendres*, 784 F.3d at 1260 (finding that a county sheriff's office should be dismissed as a non-jural entity and that the county in which the sheriff's office was located was the proper party to substitute). The Eleventh Circuit has agreed, finding that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citations omitted). Several unpublished cases from the District of Utah have found the same. *E.g.*, *Harker v. Simpson*, No. 1:08-cv-00035, 2010 WL 1257745, at *7 (D. Utah Mar. 26, 2010) (unpublished) ("The law is now well established that such a claim against a sheriff's department cannot proceed 'because governmental sub-units are not properly suable entities in § 1983 actions under *Martinez v. Winner*,

5

771 F.2d 424, 444 (10th Cir. 1985).'" (citation omitted)); *Tyler v. Utah*, No. 2:07-CV-4, 2008 WL 5390993, at *3 (D. Utah Dec. 23, 2008) (unpublished) ("As a subordinate agency of Salt Lake County, the Salt Lake County Sheriff's Office is not a separate legal entity with the capacity to sue or be sued." (citation omitted)).

B.     DCSO and DCDC

"Because claims against governmental subunits are paid from the city or county treasury, typically, the city, county or board of county commissioners is the proper party in interest under Rule 17(b) of the Federal Rules of Civil Procedure rather than the subunit." *Harker*, 2010 WL 1257745, at *7 (citation omitted); *see also Martinez*, 771 F.2d at 444 (dismissing the City of Denver Police Department because it was "not a separate suable entity," but retaining the City and County of Denver as a defendant). Accordingly, "[i]n the absence of any case law establishing that [DCSO and DCDC] are separate suable entities," the claims against them should be dismissed. *See Cheek v. Garrett*, No. 2:10-CV-508, 2011 WL 1085785, at *2 (D. Utah Mar. 21, 2011) (unpublished).

Based upon the foregoing and Plaintiff's concession that DCSO and DCDC are non-jural entities, the court finds that DCSO and DCDC are not separate suable entities. The court accordingly dismisses all causes of action against DCSO and DCDC and considers the remainder of Defendants' arguments for dismissal only as applied to Davis County. Additionally, at oral argument, counsel for both parties confirmed that information has been provided to Plaintiff that permits her to identify the fictitious defendants. Leave to amend should be freely given, FED. R. CIV. P. 15(a)(2), and the court accordingly grants Plaintiff leave to amend her complaint to name the fictitious defendants and state claims against them.

**II.     Assault, Battery, and Malice Claims**

Defendants argue that Plaintiff's assault and battery claims should be dismissed because Davis County has immunity from such claims under the GIAU. Defendants further argue that Plaintiff's malice claim should be dismissed because it is not an independent cause of action, but rather is an element of some torts. And, even if malice is regarded as an independent cause of action, Defendants argue that Davis County has immunity from such a claim under the GIAU. Plaintiff did not respond to these arguments in her response brief. Defendants argue that Plaintiff's failure to respond to arguments regarding her assault, battery, and malice claims constitutes abandonment of those claims.

A. Abandonment of Claims

Some courts have found that a plaintiff abandons a claim upon failing to respond to a defendant's arguments regarding that claim on a motion to dismiss. *See, e.g.*, *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1168 (D. Utah 2018); *accord Barnes v. AstraZeneca Pharm. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("When an argument is raised upon [a] motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal." (citation omitted)). However, this court did not find—and Defendants have not provided—binding authority requiring the court to deem claims abandoned and therefore subject to dismissal in such a circumstance. The court declines to do so here and therefore proceeds to analyze Defendants' arguments for dismissal.

B.     Immunity Under the GIAU

Defendants' primary argument for dismissal of Plaintiff's assault, battery, and malice claims is that the GIAU provides immunity from such claims. The GIAU provides that "each governmental entity and each employee of a governmental entity are immune from suit for any

7

injury that results from the exercise of a governmental function." UTAH CODE § 63G-7-201(1). Further, "[a] governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived." *Id.* § 63G-7-101(3). "[G]overnmental entity" includes "the state and its political subdivisions," as well as "a law enforcement agency, as defined in Section 53-1-102, that employs one or more law enforcement officers, as defined in Section 53-13-103." *Id.* § 63G-7-102(4)(a)–(b). The court finds that Davis County is a "governmental entity" within the meaning of the GIAU.

Utah courts apply a three-part test to determine whether a governmental entity has immunity under the GIAU. They assess "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Peck v. State*, 191 P.3d 4, 7 (Utah 2008) (citation omitted). The court considers each element of this test in turn as it applies to Davis County, the only remaining defendant on whose behalf this Motion is brought.

        1)        Governmental Function

"Governmental function" is defined broadly to mean "each activity, undertaking, or operation of a governmental entity," and includes "each activity, undertaking, or operation performed by a department, agency, employee, agent, or officer of a governmental entity," as well as "a governmental entity's failure to act." UTAH CODE § 63G-7-102(5)(a)–(c). Plaintiff does not dispute that Defendants' alleged actions are governmental functions that fall within the GIAU. The court also concludes that the alleged conduct—the "systematic physical and emotional abuse" that Plaintiff was subjected to and the assault and battery of Plaintiff at the hands of Corporal Meldrum and two unidentified officers at DCDC after she had been given a hot meal—falls within the broad definition of "governmental function," as it entails the operation of and distribution of food to

inmates at a county detention facility. *See Mglej v. Garfield County*, No. 2:13-cv-713, 2014 WL 2967605, at *3 (D. Utah July 1, 2014) (unpublished) ("The operation of a county, county sheriff's department, county jail, and county employees are a governmental function under Utah law.").

        2)        Waiver of Governmental Immunity and Exception to Waiver

The court now turns to the final two steps in its analysis of whether Davis County has immunity under the GIAU: waiver of immunity and exception to waiver. The GIAU "waives governmental immunity 'as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment.'" *Erickson v. Canyons Sch. Dist*, 467 P.3d 917, 920 (Utah Ct. App. 2020) (quoting UTAH CODE § 63G-7-301(2)(i)). Exempted from this waiver, however, are "injur[ies] aris[ing] out of or in connection with, or result[ing] from," among other things, "assault" and "battery." UTAH CODE § 63G-7-201(4)(b). Indeed, the Utah Supreme Court has held that "immunity is retained under the [GIAU] if an assault or battery is involved, regardless of who the tortfeasor is, and even if the assault or battery occurs as the result of the negligence of the state or state agent." *Sanders v. Leavitt*, 37 P.3d 1052, 1058 (Utah 2001) (citations omitted); *see also Ledfors v. Emery Cty. Sch. Dist.*, 849 P.2d 1162, 1165 (Utah 1993) (holding that the GIAU "plainly does not allow suit against a governmental entity if the underlying 'injury . . . arises out of' an assault or battery").[4]

---

[4] Although not binding with respect to this state law issue, the Tenth Circuit has observed that "[t]here are no provisions in the [GIAU] waiving immunity for intentional torts," *Miller v. Utah*, 638 F. App'x 707, 715 (10th Cir. 2016) (unpublished), and courts in this district have found the same, *e.g.*, *P.J. ex rel. Jensen v. Utah*, No. 2:05CV00739, 2006 WL 1702585, at *3 (D. Utah June 16, 2006) (unpublished) ("The [GIAU] . . . waives immunity only for negligent, not for intentional, torts."); *McCubbin v. Weber County*, Nos. 1:15-cv-132 & 1:15-cv-133, 2017 WL 3394593, at *24 (D. Utah Aug. 7, 2017) (unpublished) ("[T]he [GIAU] includes no discernable waiver of immunity or exception for intentional torts."); *Jensen v. West Jordan City*, No. 2:12-CV-736, 2016 WL 4256946, at *12 (D. Utah Aug. 11, 2016) (unpublished) ("[T]here are no provisions in the [GIAU]

Because assault and battery are intentional torts, the court concludes that governmental immunity has not been waived for such claims as alleged against Davis County. Accordingly, Davis County is immune from such intentional tort claims under the GIAU. Plaintiff's assault and battery claims against Davis County are therefore dismissed. The court also dismisses Plaintiff's cause of action for malice against Davis County, both because Plaintiff has failed to establish malice as an independent cause of action and, to the extent that Plaintiff construes malice as an intentional tort, Davis County's governmental immunity for intentional torts under the GIAU has not been waived.

### III. Section 1983 Claim

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citation omitted). Here, Plaintiff has alleged that Defendants' conduct amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Defendants do not argue that Plaintiff has failed to

---

waiving immunity for intentional tort causes of action." (citation omitted)). The court finds this case law persuasive.

allege a deprivation of her Eighth Amendment rights. Accordingly, for purposes of this Motion, the court assumes that Plaintiff has met her pleading burden in this regard.

Next, a plaintiff must identify a "person" who, acting "under color of" law caused the constitutional deprivation. *See* 42 U.S.C. § 1983. Plaintiff alleges that Defendants, "collectively" and "through their agents and employees," violated her constitutional right to be free of cruel and unusual punishment. Because the court previously found Defendants DCSO and DCDC to be non-jural entities, the only remaining Defendant is Davis County. In *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held that "municipalities and other local government units" are "persons" within the meaning of § 1983. Section 1983 does not provide for vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[V]icarious liability is inapplicable to . . . § 1983 suits . . . ."); *accord Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) ("Section 1983 does not authorize liability under a theory of respondeat superior.").[5]

To succeed on a claim for municipal liability under § 1983, a plaintiff must establish the following: (1) the existence of an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Defendants argue that Plaintiff has failed to allege sufficient facts to satisfy any of the municipal liability elements and thus Plaintiff's § 1983 claim against Davis County fails.

---

[5] Defendants argue that Plaintiff's use of the language "through their agents and employees" as part of her § 1983 allegations constitutes an allegation of vicarious liability that § 1983 does not permit. *See* ECF No. 12 at 5. The court declines to find that Plaintiff's mere use of such language renders her § 1983 claim untenable. The court will consider all of Plaintiff's allegations related to her § 1983 claim to determine the sufficiency of the claim.

A. Official Policy or Custom

The Tenth Circuit has established that a municipal policy or custom "may take one of the following forms:"

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

Defendants argue that Plaintiff has failed to identify a policy or custom that caused her alleged injuries. In her Complaint, Plaintiff alleges that Defendants acted in a "collective, systematic" way (ECF No. 2-1 ¶ 53) to deprive her of food, medical care, and mental health care and to routinely keep her in solitary confinement longer than is permissible under the law or applicable regulations. In her response brief, Plaintiff appears to concede that she has failed to identify a policy that caused her alleged injuries. Rather, Plaintiff avers that her factual allegations "suggest a 'custom' to deprive [Plaintiff] of her right to food, medical care and bodily integrity." ECF No. 17 at 8. At the very least, Plaintiff argues that her allegations evidence "a pattern of such abuse." *Id.*

Because Plaintiff has not identified a policy for purposes of her § 1983 claim against Davis County, the court considers whether Plaintiff has sufficiently alleged the existence of a custom that has caused her injury. Municipal liability under § 1983 "may be based on an informal 'custom' so long as this custom amounts to 'a widespread practice that, although not authorized by written law

or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "The custom or practice giving rise to liability must be 'so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (citation omitted). To establish a custom within the meaning of § 1983, "plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Here, although Plaintiff alleges a "custom" and "pattern" of depriving her of "food, medical care and bodily integrity" (ECF No. 17 at 8), she does not allege that others at DCDC were similarly treated. Indeed, Plaintiff expressly states that she was "deprived of food, medical care and humane conditions afforded all other inmates," (ECF No. 17 at 10), indicating that she alone was treated this way. The court finds that Plaintiff's allegations related to her apparently individualized treatment at DCDC do not rise to the level of a "custom" within the meaning of § 1983. Because Plaintiff has also failed to identify a policy within the meaning of § 1983, Plaintiff has ultimately failed to satisfy this element of municipal liability.

B. Causation

To establish municipal liability, a plaintiff must also "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The Tenth Circuit has interpreted the causation element to mean that "the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Schneider*, 717 F.3d at 770 (citation omitted). "This requirement is

13

satisfied if the plaintiff shows that 'the municipality was the "moving force" behind the injury alleged.'" *Id.* (quoting *Brown*, 520 U.S. at 404).

Because Plaintiff has failed to sufficiently allege the existence of an applicable official policy or custom, Plaintiff fails to satisfy the causation element of a municipal liability claim under § 1983. If Plaintiff cannot identify an applicable official policy or custom, then there is no such policy or custom that is "closely related to the violation of [her] federally protected right." *See Schneider*, 717 F.3d at 770 (citation omitted). Absent such policy or custom, the court cannot find that Davis County was the "moving force" behind Plaintiff's alleged injuries. *See id.* (citation omitted).

### C. State of Mind

The requisite state of mind that a plaintiff must allege to successfully state a claim of municipal liability under § 1983 may vary depending upon whether the plaintiff alleges that the municipality acted pursuant to an unlawful policy or custom, or whether an unlawful action was taken pursuant to a facially lawful policy or custom. *See Brown*, 520 U.S. at 405–07 (discussing the applicable state of mind standards for § 1983 claims); *Schneider*, 717 F.3d at 770 (discussing the "deliberate indifference" standard). In either case, "the prevailing state-of-mind standard for a municipality is deliberate indifference regardless of the nature of the underlying constitutional violation." *Schneider*, 717 F.3d at 771 n.5 (citation omitted). In their motion, Defendants assume that the applicable state of mind standard is deliberate indifference. Plaintiff only mentions deliberate indifference as it pertains to an Eighth Amendment claim for failure to provide medical care, although the court understands that Davis County's alleged failure to provide Plaintiff with medical care is not the sole basis of Plaintiff's § 1983 claim. Nevertheless, based upon the

foregoing, the court will apply the prevailing standard of deliberate indifference to Plaintiff's municipal liability claim.

The Tenth Circuit has explained how deliberate indifference may be established:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]

*Schneider*, 717 F.3d at 771 (citation omitted). While Plaintiff makes no specific state of mind allegations under her third cause of action for violation of her civil rights under § 1983, under her fifth cause of action for malice, Plaintiff alleges that Defendants acted with "reckless indifference," "deliberate blindness," and "malice." ECF No. 2-1 ¶¶ 64–65. Defendants argue that Plaintiff has failed to establish deliberate indifference because she failed to allege that Davis County had notice of the alleged abuse that she suffered. However, Plaintiff's allegations that Defendants engaged in "collective, systematic" actions that amounted to her abuse (ECF No. 2-1 ¶ 43), including keeping her in solitary confinement for longer than authorized by law or regulations and routinely denying her food, may be sufficient to establish a "pattern of unconstitutional behavior" or as action or inaction for which the violation of Plaintiff's constitutional rights is a "highly predictable or plainly obvious consequence." *See Schneider*, 717 F.3d at 771 (citation omitted). Nevertheless, even if Plaintiff's allegations are sufficient to establish deliberate indifference, Plaintiff's failure to plead an official policy or custom, and consequently causation, cause her § 1983 claim for municipal liability against Davis County to fail.

In sum, Plaintiff's failure to identify an official policy or custom that caused her alleged injuries proves fatal to her § 1983 claim against Davis County. Because of Plaintiff's failure to sufficiently allege facts to establish every element of a § 1983 claim for municipal liability, the court dismisses Plaintiff's § 1983 claim against Davis County.

IV.     **Utah Constitution Claim**

In her Complaint, Plaintiff also alleges that Defendants' conduct amounts to "cruel and unusual punishment . . . which is precluded under Article I, Section 9 of the Utah Constitution." ECF No. 2-1 ¶ 53. Plaintiff specifically alleges that Defendants, through their agents and employees, violated her constitutional rights "to humane facilities and conditions," "to express condition complaints," "to medical care and attention," and "to appropriate mental health care." *Id.* ¶¶ 54–57. In her response brief, Plaintiff characterizes her claim under article I, section 9 of the Utah constitution as an unnecessary rigor claim. ECF No. 17 at 9–10. Article I, section 9 of the Utah constitution provides both that "cruel and unusual punishments [shall not] be inflicted," and "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." UTAH CONST. art. I, § 9.

The Utah Supreme Court has distinguished the unnecessary rigor clause from the cruel and unusual punishment clause of article I, section 9:

> The unnecessary rigor clause of the Utah Constitution protects persons arrested or imprisoned from the imposition of circumstances on them during their confinement that demand more of the prisoner than society is entitled to require. The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement. By contrast, the cruel and unusual punishment clause in the state constitution is directed to the sentence imposed. While there is some overlap on a factual level, the purposes are different. Torture may be cruel and unusual but strict silence during given hours may not. Strict silence, however, may

> impose unnecessary rigor or unduly harsh restrictions on the service
> of one's otherwise proper sentence.

*Dexter v. Bosko*, 184 P.3d 592, 596 (Utah 2008). Although Plaintiff alleged in her Complaint that Defendants' conduct amounts to cruel and unusual punishment in violation of article I, section 9, Plaintiff's specific allegations sound under the unnecessary rigor clause of article I, section 9, as they challenge the conditions of her confinement. Additionally, to the extent that Plaintiff asserted her state constitutional claim based on article I, section 9's cruel and unusual punishment clause, it appears from Plaintiff's response brief that she has abandoned that theory, focusing entirely on the unnecessary rigor clause. Accordingly, the court construes Plaintiff's state constitutional claim as one based on the unnecessary rigor provision of article I, section 9 of the Utah constitution and considers whether such a claim has been sufficiently pleaded.

"A prisoner suffers from unnecessary rigor when subject to unreasonably harsh, strict, or severe treatment." *Dexter*, 184 P.3d at 597. "[U]nnecessary rigor must be treatment that is clearly excessive or deficient and unjustified, not merely the frustrations, inconveniences, and irritations that are common to prison life." *Bott v. DeLand*, 922 P.2d 732, 741 (Utah 1996), *abrogated in part on other grounds by Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. School Dist.*, 16 P.3d 533 (Utah 2000). "When the claim of unnecessary rigor arises from an injury, a constitutional violation is made out only when the act complained of presented a substantial risk of serious injury for which there was no reasonable justification at the time." *Dexter*, 184 P.3d at 597.

In *Spackman*, the Utah Supreme Court held that a plaintiff may recover monetary damages from a municipal employee under a self-executing provision of the Utah constitution if the plaintiff establishes the following: (1) the plaintiff "suffered a 'flagrant' violation of his or her constitutional rights"; (2) "existing remedies do not redress [the plaintiff's] injuries"; and (3) "equitable relief,

such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." 16 P.3d at 538–39. If "the foregoing requirements are satisfied, a trial on the merits should proceed as would any other tort claim." *Id.* at 539. The same framework is used to evaluate municipal liability suits. *Kuchcinski v. Box Elder County*, 450 P.3d 1056, 1067 (Utah 2019). The Utah Supreme Court has held that article I, section 9 of the Utah constitution is self-executing. *Bott*, 922 P.2d at 737. Defendants argue that Plaintiff has failed to establish the first and second requirements of the *Spackman* test.[6] As it did in its § 1983 analysis, the court considers each disputed element in turn as it applies to Davis County.

The Utah Supreme Court has borrowed from § 1983 jurisprudence in articulating the pleading standard for a municipality's flagrant violation of a plaintiff's constitutional rights. *Kuchcinski*, 450 P.3d at 1067. A plaintiff "must show an 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Id.* (quoting *Monell*, 436 U.S. at 691). "And, in order for an action pursuant to an official municipal policy to constitute a flagrant violation, the plaintiff must show (1) the existence of a municipal policy or custom, (2) that this policy or custom 'evidences a "deliberate indifference"' to the plaintiff's constitutional rights, and (3) that this policy or custom was 'closely related to the ultimate injury.'" *Id.* (citation omitted). Defendants argue that Plaintiff's claim for municipal liability under the Utah constitution fails for the same reason that Plaintiff's § 1983 claim fails—Plaintiff failed to allege that a county policy caused her injuries and instead couches her argument in terms of vicarious liability. For the same reasons set forth in the court's analysis of Plaintiff's § 1983 claim based on municipal liability, Plaintiff's state

---

[6] Defendants do not move for dismissal based on Plaintiff's failure to satisfy the third element of the *Spackman* test. The court therefore does not address this element.

constitutional claim based on municipal liability also fails. The court accordingly dismisses Plaintiff's state constitutional claim against Davis County. Because Plaintiff has failed to establish a flagrant violation of her constitutional rights, the court does not reach the issue of whether an existing remedy would redress Plaintiff's alleged injuries.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Plaintiff is granted leave to amend as follows:

1. Plaintiff's claims against DCSO and DCDC are DISMISSED, as DCSO and DCDC are non-jural entities.

2. Plaintiff's claims of assault, battery, and malice against Davis County are DISMISSED.

3. Plaintiff's claim under 42 U.S.C. § 1983 against Davis County is DISMISSED.

4. Plaintiff's claim under article I, section 9 of the Utah constitution against Davis County is DISMISSED.

5. Plaintiff is granted leave to amend her Complaint to identify the fictitious defendants and state claims against them. The deadline for filing the Amended Complaint is August 3, 2021.

6. Plaintiff's request for an award of fees and costs is DENIED. Plaintiff has provided no statutory or other authority to support such an award.

DATED July 13, 2021.

          BY THE COURT

          _____
          Jill N. Parrish
          United States District Court Judge